ALLAN ANDERSON (SBN 133672)
LYNN R. FIORENTINO (SBN 226691)
CATHERINE BAUMGARTNER (SBN 327062)
**ARENTFOX SCHIFF LLP**
44 Montgomery Street
38th Floor
San Francisco, CA 94104
Telephone: 415.757.5500
Facsimile: 415.757.5501
allan.anderson@afslaw.com
lynn.fiorentino@afslaw.com
catherine.baumgartner@afslaw.com

Attorneys for Defendant
L'OCCITANE, INC.

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BONNIE REYES, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>L'OCCITANE INC., A New York corporation, and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No.  **'23CV0203 RSH WVG**<br><br>**DEFENDANT L'OCCITANE, INC.'S NOTICE OF REMOVAL** |

## TO THE CLERK OF THE ABOVE-ENTITLED COURT:

**PLEASE TAKE NOTICE** that Defendant L'OCCITANE INC. ("L'Occitane") hereby removes this civil action from the Superior Court of the State of California, County of San Diego, to the United States District Court for the Southern District of California under 28 U.S.C. §§ 1332, 1441, and 1446. Diversity jurisdiction exists because there is complete diversity and the amount in controversy exceeds $75,000.[1]

//

//

---

[1] During a meet and confer call on January 26, 2023, Plaintiff's counsel advised L'Occitane's counsel that Plaintiff does not object to this removal.
AFDOCS:26896389.1

# I.     INTRODUCTION

1.     Plaintiff Bonnie Reyes ("Plaintiff") alleges that she purchased the Ultra Rich Body Cream for Dry and Sensitive Skin from Defendant L'Occitane, Inc. ("L'Occitane) and that it contained nonfunctional slack fill. *See* Plaintiff's Complaint ("Compl.") at ¶ 1.

2.     Plaintiff alleges causes of action for violations under California Unfair Competition Law, Business and Professions Code § 17200, *et seq.*, False Advertising Law, Business and Professions Code § 17500, *et seq.*, and California Consumers Legal Remedies Act, Civil Code § 1750, *et seq.* Compl., ¶ 4.

3.     Plaintiff also purports to bring this action on behalf of a "[a]ll Californians who purchased any of Defendant's Products containing non-functional slack fill in California for personal use during the four years preceding the filing of th[e] Complaint (the 'Class')." Compl., ¶ 34.

4.     The products at issue for the Class purportedly "extend[] to all variations of [L'Occitane] Products sold in opaque containers." Compl., ¶ 1.

5.     Plaintiff maintains that she and the Class lost money as a result of their purchases. Compl., ¶ 40.

6.     Plaintiff asserts that the slack fill in the product caused Plaintiff to be deceived as to the amount of product present within the Product and resulted in the loss of money due to paying "an unwarranted premium for this product." Compl., ¶ 64.

7.     Plaintiff filed her complaint on December 29, 2022, in the Superior Court of the State of California, County of San Diego, Case No. 37-2022-00052096-CU-MT-CTL. Plaintiff served L'Occitane with the Complaint on January 4, 2023. A true and correct copy of the Complaint is attached hereto within **Exhibit A**.

## II.     THIS CASE IS REMOVABLE UNDER DIVERSITY JURISDICTION

8.     This action is removable under 28 U.S.C. § 1441 because this Court would have had original jurisdiction under 28 U.S.C. § 1332 had Plaintiff filed this

action initially in federal court. Plaintiff is not a citizen of the same state as L'Occitane or any of the Doe Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

### A. Complete Diversity Exists

9.     The Complaint alleges Plaintiff "is, and at all times relevant hereto was, a citizen of California." Compl., ¶ 7. Accordingly, on information and belief, Plaintiff is and was at the time of filing of the Complaint a citizen of California.[2]

10.     Defendant L'Occitane is a corporation. For the purposes of diversity jurisdiction, a corporation is a citizen of its state of incorporation and of the state in which it has its principal place of business. 28 U.S.C. § 1332(c)(1). L'Occitane is incorporated under the laws of New York, and its principal place of business is in New York, New York. It is therefore a citizen of New York.

11.     The defendants identified as Does 1 through 25 in the Complaint are fictitious parties against whom no cause of action can be validly alleged. The Complaint does not include allegations of citizenship for the Doe Defendants. Compl., ¶ 10. To the best of L'Occitane's information and belief, no fictitiously designated defendant has been served with process, and these fictitious parties may be ignored for purposes of determining removal.

12.     Because Plaintiff is a citizen of California and L'Occitane is a citizen of New York, complete diversity of citizenship exists, and removal is proper.

### B. The Amount in Controversy Exceeds $75,000

13.     Plaintiff seeks damages, including restitution and/or disgorgement of L'Occitane's profits due to the products at issue, individually and on a class-wide basis. Compl., p. 18, Prayer for Relief.  Plaintiff also seeks "injunctive relief and/or corresponding declaratory relief." Compl., ¶¶ 43, 97.

---

[2] A party may allege citizenship for diversity jurisdiction on information and belief if that information is not reasonably ascertainable by the party. *Carolina Cas. Ins. Co. v. Team Equip., Inc.*, 741 F.3d 1082, 1087 (9th Cir. 2014).

14.     Plaintiff seeks the disgorgement of millions of dollars acquired by L'Occitane allegedly to the damage and detriment of consumers. Specifically, Plaintiff seeks an order requiring L'Occitane "disgorge its ill-gotten gains and/or award full restitution of all monies wrongfully acquired by means of such acts of false advertising, plus interests and attorneys' fees." Compl., ¶¶ 84, 44 . The Complaint also alleges that L'Occitane's use of slack fill in the products' packaging "result[ed] in profits of millions of dollars or more to [L'Occitane], all to the damage and detriment of the consuming public." Compl., ¶ 12.

15.     In determining the amount in controversy, it is also proper to consider "the potential cost to the defendant of complying with [an] injunction." *In re Ford Motor Co./Citibank (S. Dakota), N.A.*, 264 F.3d 952, 958 (9th Cir. 2001) ("Under the 'either viewpoint' rule, the test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce…. In other words, where the value of a plaintiff's potential recovery…is below the jurisdictional amount, but the potential cost to the defendant of complying with the injunction exceeds that amount, it is the latter that represents the amount in controversy for jurisdictional purposes.").

16.     To avoid the alleged nonfunctional slack fill, the Complaint states that L'Occitane could have "used packaging appropriate for the amount of beauty cream product contained [in the Product] or indicated how much lotion the Products contain[] with a clear and conspicuous fill line." Compl., ¶¶ 62, 70.  Plaintiff also suggests that L'Occitane "can easily increase the quantity of lotion in each container (or, alternatively, decrease the size of the containers) significantly." Compl., ¶ 33.

17.     To the extent that the Court deems it necessary, in cases where a specific value is not asserted, it is also appropriate to consider whether it is "facially apparent" from the Complaint that the claims likely exceed $75,000. *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997); *see also Luckett v. Delta Airlines,*

*Inc.*, 171 F.3d 295, 298 (5th Cir. 1999)[3] (concluding it was facially apparent that a plaintiff's claims met the amount in controversy requirement when the complaint sought relief for property damage, travel expenses, an ambulance trip, six days in the hospital, pain and suffering, humiliation, and a temporary inability to do housework). To do so, the Court may use "judicial experience and common sense." *Dourian v. Stryker Corp.*, 2012 WL 12893752, No. CV 12-1790 DSF, at *1 (C.D. Cal. 2012).

18.    Additionally, the Complaint states that after January 28, 2023, "Plaintiff will amend th[e] [C]omplaint to include a request for compensatory damages, statutory damages, restitution, and attorneys' fees under the C.L.R.A." Compl., ¶ 97. It is "well established that courts should consider attorney's fees recoverable by statute when calculating the amount in controversy." *Canesco v. Ford Motor Co.*, 570 F. Supp. 3d 872, 903 (S.D. Cal. 2021).

19.    Given the disgorgement of millions of dollars in profits at issue and the high cost of complying with the injunctive relief sought, as well as additional amounts in controversy that are facially apparent from the Complaint, the total amount in controversy exceeds $75,000, and therefore satisfies the monetary requirement for diversity jurisdiction. Thus, L'Occitane has satisfied its burden to establish that the amount in controversy exceeds $75,000.

20.    By the statements contained in this Notice of Removal, L'Occitane does not concede that Plaintiff is entitled to any damages.

### III.    CONSENT

21.    L'Occitane is the only defendant named in Plaintiff's Complaint. Compl., ¶¶ 8-9. To the best of L'Occitane's knowledge, Plaintiff has not joined or served any other defendant as of the date of this filing. Thus, no other entity need

---

[3] The Ninth Circuit has adopted the Fifth Circuit's procedure for determining the amount in controversy when a plaintiff does not assert a specific value in a complaint. *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997).

consent to removal. *See* 28 U.S.C. § 1446(b)(2)(A) (requiring consent to removal only from defendants who have been "properly joined and served".)

## IV.   THIS FILING IS TIMELY

22.    L'Occitane  was formally served on January 4, 2023, and is provided 30 days in which to remove Plaintiff's Complaint to federal court. *See* 28 U.S.C. § 1446(b). A true and accurate copy of the Proof of Service is attached hereto as **Exhibit B**. L'Occitane filed this Notice of Removal within the 30-day statutory window. Removal of this action is therefore timely. *See* 28 U.S.C. § 1446(b).

## V.   VENUE OF REMOVED ACTION

23.    The Southern District of California is the United States district court for the district and division embracing the state court where this action was filed and is pending. Venue is proper in this Court under 28 U.S.C. § 1441(a).

## VI.   NOTICE TO THE STATE COURT

24.    A copy of this Notice of Removal is being served on all served parties and filed with the Superior Court of the State of California, County of San Diego, where this case was originally filed.

## VII.   PLEADINGS IN THE STATE COURT ACTION

25.    All process, pleadings, and orders served upon L'Occitane in this action are attached hereto as **Exhibits A through C**. A true and correct copy of the San Diego Superior Court Register of Actions for this matter is attached as **Exhibit C**.

## VIII.   NON-WAIVER OF DEFENSES

26.    L'Occitane expressly reserves all of it defenses. By removing the action to this Court, L'Occitane does not waive any rights or defenses available under federal or state law. L'Occitane expressly reserves the right to move for dismissal of the Complaint pursuant to Rule 12 of the Federal Rules of Civil Procedure. Nothing in this Notice of Removal should be taken as an admission that Plaintiff's allegations are sufficient to state a claim or have any substantive merit.

1        27.    Undersigned counsel states that this removal is well grounded in fact,

2   warranted by existing law, and not interposed for an improper purpose.

3        WHEREFORE, Defendant L'Occitane hereby removes the above-entitled case

4   to the United States District Court for the Southern District of California and seeks

5   resolution by this Court of all issues raised herein.

6   Dated:      February 2, 2023      **ARENTFOX SCHIFF LLP**

8                       By: _Lynn R. Fiorentino_

9                       Allan Anderson
                           Lynn R. Fiorentino

10                     Catherine Baumgartner

11                     Attorneys for Defendant
                           L'OCCITANE, INC.

1

## EXHIBIT TABLE OF CONTENTS

**EXHIBIT A** ................................................................................9

**EXHIBIT B**................................................................................32

**EXHIBIT C** ................................................................................34

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
L'OCCITANE, INC., a New York corporation, and DOES 1 through 25, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
BONNIE REYES, individually and on behalf of all others similarly situated,

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego
**12/29/2022** at 12:44:22 PM
Clerk of the Superior Court
By Brenda Ramirez, Deputy Clerk

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO<br>330 West Broadway, San Diego, CA  92101 | CASE NUMBER:<br>*(Número del Caso)*  37-2022-00052096-CU-MT-CTL |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Scott J. Ferrell (Bar # 202091) / Victoria C. Knowles (Bar # 277231)
PACIFIC TRIAL ATTORNEYS, APC
4100 Newport Place Drive, Suite 800, Newport Beach, CA 92660

Phone No.: (949) 706-6464

DATE: 12/30/2022
*(Fecha)*

Clerk, by B. Ramirez
*(Secretario)*

, Deputy
*(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]
Superior Court of California
County of San Diego

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* **L'OCCITANE, INC., a New York corporation**

   under: ☒ CCP 416.10 (corporation)  ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*
LexisNexis® Automated California Judicial Council Forms

**EXHIBIT A**

9

1  PACIFIC TRIAL ATTORNEYS
   A Professional Corporation
2  Scott J. Ferrell, Bar No. 202091
   sferrell@pacifictrialattorneys.com
3  4100 Newport Place Drive, Ste. 800
   Newport Beach, CA  92660
4  Tel: (949) 706-6464
   Fax: (949) 706-6469
5
   Attorneys for Plaintiff
6

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego
**12/29/2022** at 12:44:22 PM
Clerk of the Superior Court
By Brenda Ramirez, Deputy Clerk

7

8             **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                **FOR THE COUNTY OF SAN DIEGO**

10

11  BONNIE REYES, individually and on behalf of      Case No.   37-2022-00052096-CU-MT-CTL
    all others similarly situated,
12                                                   **CLASS ACTION COMPLAINT**
                  Plaintiff,
13                                                   1. VIOLATION OF CALIFORNIA
              v.                                     UNFAIR COMPETITION LAW,
14                                                   BUSINESS AND PROFESSIONS CODE
    L'OCCITANE INC., a New York corporation,         § 17200, *et seq.*
15  and DOES 1 through 25, inclusive,                2. FALSE AND MISLEADING
                                                     ADVERTISING IN VIOLATION OF
16                Defendants.                        BUSINESS AND PROFESSIONS CODE
                                                     § 17500, *et seq.*
17                                                   3. VIOLATION OF CALIFORNIA
                                                     CONSUMERS LEGAL REMEDIES
18                                                   ACT, CIVIL CODE § 1750, *et. seq.*

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

1.   Defendant L'Occitane ("Defendant") manufactures and sells a popular line of beauty products throughout the United States (the "Products"). To increase profits at the expense of consumers and fair competition, Defendant deceptively sells the Products in oversized packaging that does not reasonably inform consumers that they are more than half empty. Defendant's slack-fill scam extends to all variations of its Products sold in opaque containers. Defendant dupes unsuspecting consumers across America to pay premium prices for empty space. Below is a true and correct image of Defendant's Ultra Rich Body Cream for Dry and Sensitive Skin, the beauty Product purchased by Plaintiff, in the opaque container evidencing the deception. The first photograph shows the Product as it appears to the purchaser, and the second photograph shows that the Product packaging is approximately 50% empty.



EXHIBIT A

11



2.      Defendant markets the Products in a systematically misleading manner by representing them as adequately filled when, in fact, they contain an unlawful amount of empty space or "slack-fill." Defendant underfills the Products for no lawful reason. The front of the Products' packaging does not include any information that would reasonably apprise Plaintiff of the quantity of product relative to the size of the container, such as a fill line.

3.      Defendant underfills the Products to save money (by not filling the containers) and to deceive consumers into purchasing the Products over its competitors' products. Defendant's slack-fill scheme not only harms consumers, but it also harms its competitors who have implemented labeling changes designed to alert consumers to the true amount of product in each container.

4.      Accordingly, Defendant has violated the California Consumers Legal Remedies Act ("CLRA"), particularly California Civil Code sections 1770(a)(2), 1770(a)(5), 1770(a)(7), and 1770(a)(9). As such, Defendant has committed per se violations of the Unfair Competition Law ("UCL"), Business & Professions Code section 17200, *et seq.* and the False Advertising Law ("FAL"), Business & Professions Code section 17500, *et seq.*

1    5.    Plaintiff and consumers have thus suffered injuries in fact caused by the false, unfair,

2    deceptive, unlawful, and misleading practices set forth herein.

3    6.    Several California courts have found that cases involving nearly identical claims are

4    meritorious and appropriate for class treatment. *See, e.g., Winkelbauer v. Orgain Mgmt. et. al,* Case

5    No. 20STCV44583 (L.A.S.C. May 20, 2021) (defendant's demurrer to claims involving slack-filled

6    protein powder products overruled); *Merry, et al. v. International Coffee & Tea, LLC dba The Coffee*

7    *Bean,* Case No. CIVDS1920749 (San Bernardino Superior Court Jan. 27, 2020) (defendant's demurrer

8    to slack-filled powder container claims overruled); *Tsuchiyama v. Taste of Nature, Inc.,* Case No.

9    BC651252 (L.A.S.C. Feb. 28, 2018) (defendant's motion for judgment on the pleadings involving

10   slack-filled Cookie Dough Bites® candy box claims denied and nationwide settlement subsequently

11   certified through Missouri court); *Thomas v. Nestle USA, Inc.,* Cal. Sup. Case No. BC649863 (April

12   29, 2020) (certifying as a class action, over opposition, slack-fill claims brought under California

13   consumer protection laws).

14   **PARTIES**

15   7.    Plaintiff is, and at all times relevant hereto was, a citizen of California. She purchased

16   Defendant's 6.9-ounce size Ultra Rich Body Cream for Dry and Sensitive Skin for personal use in

17   2022. She paid a premium price for the Product. In making her purchase, Plaintiff relied upon the

18   opaque packaging, including the size of the container and product label, which was prepared and

19   approved by Defendant and its agents, and disseminated state and nationwide, as well as designed to

20   encourage consumers like Plaintiff to purchase the Product. Plaintiff understood the size of the

21   container and product label to indicate that the amount of lotion contained therein was commensurate

22   with the size of the container, and she would not have purchased the Product, or would not have paid a

23   price premium for the Product, had she known that the size of the container and product label were

24   false and misleading.

25   8.    Defendant L'Occitane Inc. is a New York corporation with its principal place of

26   business located in New York, New York. Defendant, directly and through its agents, conducts

27   business nationwide. Defendant has substantial contacts with and receives substantial benefits and

28   income from and through the State of California. Defendant is the owner, manufacturer, and

distributor of the Products, and is the company that created and/or authorized the false, misleading, and deceptive packaging for the Products.

9. At all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and/or scope of said agency and/or employment with the full knowledge and consent of each of the Defendants. Each of the acts and/or omissions complained of herein were alleged and made known to, and ratified by, each of the other Defendants (L'Occitane Inc. and DOE Defendants will hereafter collectively be referred to as "Defendants").

10. The true names and capacities of the Defendants sued herein as DOES 1 through 25, inclusive, are currently unknown to Plaintiff, who therefore sue such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend this Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

11. In committing the wrongful acts alleged herein, Defendant planned and participated in and furthered a common scheme by means of false, misleading, deceptive, and fraudulent representations to induce members of the public to purchase the Products. Defendant participated in the making of such representations in that it did disseminate or cause to be disseminated said misrepresentations.

12. Defendant, upon becoming involved with the manufacture, advertising, and sale of the Products, knew or should have known that its advertising of the Products' packaging, specifically by representing that they were full, was false, deceptive, and misleading. Defendant affirmatively misrepresented the amount of lotion contained in the Products' packaging in order to convince the public and consumers to purchase the Products, resulting in profits of millions of dollars or more to Defendant, all to the damage and detriment of the consuming public.

13. Defendant has created and still perpetuates a falsehood that the Products' packaging contains an amount of cream commensurate with the size of the package, though they actually contain nonfunctional, unlawful slack-fill. As a result, Defendant's consistent and uniform advertising claims

1   about the Products are false, misleading, and/or likely to deceive in violation of California packaging

2   and advertising laws.

3   ## JURISDICTION AND VENUE

4       14.    This Court has subject matter jurisdiction over this action.  This Court has personal

5   jurisdiction over Defendant because Defendant has conducted and continues to conduct substantial

6   business in the State of California.

7       15.    Venue is proper in this Court because Defendant conducts substantial business in this

8   County, and because a substantial portion of the misconduct alleged herein occurred in this County.

9   ## FACTUAL BACKGROUND

10      16.    The amount of product inside any product packaging is material to any consumer

11  seeking to purchase that product. The average consumer spends only 13 seconds deciding whether to

12  make an in-store purchase[1]; this decision is heavily dependent on a product's packaging, including the

13  package dimensions. Research has demonstrated that packages that seem larger are more likely to be

14  purchased because consumers expect package size to accurately represent the quantity of the good

15  being purchased[2].

16      17.    Accordingly, Defendant chose a certain size container for its Products to convey to

17  consumers that they are receiving a certain and substantial amount of lotion product commensurate

18  with the size of the container. Such representations constitute an express warranty regarding the

19  Products' content.

20      18.    Slack-fill is the difference between the actual capacity of a container and the volume of

21  product contained therein. Nonfunctional slack-fill is the empty space in a package that is filled to less

22  than its capacity for illegitimate or unlawful reasons.

23      19.    Defendant falsely represents the quantity of product in each of the Products' opaque

24  containers through its packaging. The size of each container leads the reasonable consumer to believe

25

26

27  [1] Randall Beard, *Make the Most of Your Brand's 20-Second Window*, NIELSEN, Jan. 13, 2015, https://www.nielsen.com/us/en/insights/article/2015/make-the-most-of-your-brands-20-secondwindown./.

28  [2] P. Raghubir & A. Krishna, *Vital Dimensions in Volume Perception: Can the Eye Fool the Stomach?*, 36 J. MARKETING RESEARCH 313-326 (1999).

**EXHIBIT A**

15

1   he or she is purchasing a container full of beauty cream product when in reality what he or she actually

2   receives is significantly less than what is represented by the size of the container.

3          20.     Even if Plaintiff and other reasonable consumers of the Products had a reasonable

4   opportunity to review, prior to the point of sale, other representations of quantity, such as net weight or

5   serving disclosures, they did not and would not have reasonably understood or expected such

6   representations to translate to a quantity of lotion product meaningfully different from their

7   expectation of an amount of skin cream commensurate with the size of the container.

8          21.     Prior to the point of sale, the Products' packaging does not allow for a visual or audial

9   confirmation of the contents of the Products. The Products' opaque packaging prevents a consumer

10  from observing the contents before opening. Even if a reasonable consumer were to "shake" the

11  Products before opening the container, the reasonable consumer would not be able to discern the

12  presence of any nonfunctional slack-fill, let alone the significant amount of nonfunctional slack-fill

13  that is present in the Products.

14         22.     The other information that Defendant provides about the quantity of lotion on the labels

15  of the Products does not enable reasonable consumers to form any meaningful understanding about

16  how to gauge the quantity of contents of the Products as compared to the size of the container itself.

17  For instance, the front of the Products' packaging does not have any labels that would provide Plaintiff

18  with any meaningful insight as to the amount of lotion to be expected, such as a fill line.

19         23.     Disclosures of net weight and serving sizes in ounces, pounds, or grams do not allow

20  the reasonable consumer to make any meaningful conclusions about the quantity of skin cream

21  contained in the Products' containers that would be different from their expectation that the quantity of

22  beauty cream is commensurate with the size of the container.

23         24.     Plaintiff would not have purchased the Product had she known that the Product

24  contained slack-fill that serves no functional or lawful purpose.

25         25.     The slack-fill in the Products does not protect the contents of the packages. In fact,

26  because the Products consist of cream, there is no need to protect the Products with the slack-fill

27  present.

28

26.     The machines used to package the Products would not be affected if there was more cream product added. At most, a simple recalibration of the machines would be required. Upon information and belief, adjusting these machines is rather simple.

27.     Because the packages are filled to about half of their capacity, Defendant can increase the Products' fill level significantly without affecting how the containers are sealed, or it can disclose the fill-level on the outside labeling to inform consumers of the amount of lotion actually in the container, consistent with the law.

28.     The slack-fill present in the Products is not a result of the cream product settling during shipping and handling. Given the Products' density, shape, and composition, any settling occurs immediately at the point of fill. No measurable product settling occurs during subsequent shipping and handling.

29.     Even if *some* product settling may occur, there is no reason why the Products' containers are over 50% empty.

30.     The packages do not perform a specific function that necessitates the slack-fill. This safe harbor would only apply if a specific function were "inherent to the nature of the food and [] clearly communicated to consumers." The packages do not perform a function that is inherent to the nature of the product. Defendant did not communicate a specific function to consumers, making this provision inapplicable.

31.     The Products' packaging is not reusable or of any significant value to the Products independent of its function to hold the lotion product. The Products' containers are intended to be discarded immediately after the cream product is consumed.

32.     The slack-fill present in the Products does not accommodate required labeling, discourage pilfering, facilitate handling, or prevent tampering.

33.     Defendant can easily increase the quantity of lotion in each container (or, alternatively, decrease the size of the containers) significantly.

## CLASS ACTION ALLEGATIONS

34.     Plaintiff bring this action on her own behalf and on behalf of all other persons similarly situated. The Class which Plaintiff seeks to represent comprises:

**All Californians who purchased any of Defendant's Products containing non-functional slack fill in California for personal use during the four years preceding the filing of this Complaint (the "Class").**

35.     Excluded from the Class are Defendant's officers, directors, and employees, and any individual who received remuneration from Defendant in connection with that individual's use or endorsement of the Products. Said definition may be further defined or amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

36.     The Class is comprised of many thousands of persons. The Class is so numerous that joinder of all members is impracticable and the disposition of their claims in a class action will benefit the parties and the Court.

37.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common questions of law and fact include, but are not limited to, the following:

    a.  The true nature and amount of product contained in each Products' packaging;

    b.  Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive;

    c.  Whether Defendant's conduct is an unlawful business act or practice within the meaning of Business and Professions Code section 17200, *et seq.*;

    d.  Whether Defendant's conduct is an unfair business act or practice within the meaning of Business and Professions Code section 17200, *et seq.*;

    e.  Whether Defendant's advertising is untrue or misleading within the meaning of Business and Professions Code section 17500, *et seq.*;

    f.  Whether Defendant made false and misleading representations in its advertising and labeling of the Products;

    g.  Whether Defendant knew or should have known that the misrepresentations were false;

    h.  Whether Plaintiff and the Class paid more money for the Products than they actually received;

i.   How much more money Plaintiff and the Class paid for the Products than they actually received;

j.   Whether Defendant was unjustly enriched at the expense of Plaintiff and the Class members;

k.   Whether Defendant intentionally misrepresented the amount of lotion contained in the Products' packaging; and

l.   Whether Defendant negligently misrepresented the amount of lotion contained in the Products' packaging.

38.    Plaintiff's claims are typical of the claims of the proposed Class, as the representations and omissions made by Defendant are uniform and consistent and are contained on packaging and labeling that was seen and relied on by Plaintiff and members of the Class.

39.    Plaintiff will fairly and adequately represent and protect the interests of the proposed Class. Plaintiff has retained competent and experienced counsel in class action and other complex litigation.

40.    Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's false, deceptive, and misleading representations. Plaintiff purchased the Products because of the size of the containers and the Product labels, which she believed to be indicative of the amount of lotion product contained therein as commensurate with the size of the container. Plaintiff relied on Defendant's representations and would not have purchased the Products if she had known that the packaging, labeling, and advertising as described herein was false and misleading.

41.    The Class is identifiable and readily ascertainable. Notice can be provided to such purchasers using techniques and a form of notice similar to those customarily used in class actions.

42.    A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for the Class to prosecute their claims individually. The trial and the litigation of Plaintiff's claims are manageable. Individual litigation of the legal and factual issues raised by Defendant's conduct would increase delay and expense to all parties and the court system. The class action device

1   presents far fewer management difficulties and provides the benefits of a single, uniform adjudication,

2   economies of scale, and comprehensive supervision by a single court.

3        43.    Defendant has acted on grounds generally applicable to the entire Class, thereby

4   making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the

5   Class as a whole. The prosecution of separate actions by individual Class members would create the

6   risk of inconsistent or varying adjudications with respect to individual members of the Class that

7   would establish incompatible standards of conduct for Defendant.

8        44.    Absent a class action, Defendant will likely retain the benefits of its wrongdoing.

9   Because of the small size of the individual Class members' claims, few, if any, Class members could

10  afford to seek legal redress for the wrongs complained of herein. Absent a representative action, the

11  Class members will continue to suffer losses and Defendant will be allowed to continue these

12  violations of law and to retain the proceeds of its ill-gotten gains.

13  **FIRST CAUSE OF ACTION**

14  **VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW**

15  **BUSINESS & PROFESSIONS CODE § 17200,** *et seq.*

16       45.    Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs and

17  incorporate the same as if set forth herein at length.

18       46.    Plaintiff brings this claim individually and on behalf of the Class.

19       47.    The California Sherman Food, Drug, and Cosmetic Act ("Sherman Law"), Cal. Health

20  & Safety Code Section 109875 *et seq.*, declares any food to be misbranded if it is false or misleading

21  in any particular or if the labeling does not conform with the requirements for nutrition labeling. Cal.

22  Health & Safety Code Sections 110660, 110665, 110670.

23       48.    The Unfair Competition Law ("UCL") prohibits "any unlawful, unfair... or fraudulent

24  business act or practice." Cal. Bus & Prof. Code § 17200.

25  **A. "Unfair Prong"**

26       49.    Under the UCL, a challenged activity is "unfair" when "any injury it causes outweighs

27  any benefits provided to consumers and the injury is one that the consumers themselves could not

28

**EXHIBIT A**

20

reasonably avoid." *Camacho v. Auto Club of Southern California*, 142 Cal. App. 4th 1394, 1403 (2006).

50.   Defendant's actions alleged herein do not confer any benefit to consumers.

51.   Defendant's actions alleged herein cause injuries to consumers, who do not receive a quantity of product commensurate with their reasonable expectations.

52.   Defendant's actions alleged herein cause injuries to consumers, who do not receive a level of lotion commensurate with their reasonable expectations.

53.   Defendant's actions alleged herein cause injuries to consumers, who end up overpaying for the Products and receiving a quantity of beauty cream less than what they expected to receive.

54.   Consumers cannot avoid any of the injuries caused by Defendant's actions as alleged herein.

55.   Accordingly, the injuries caused by Defendant's conduct alleged herein outweigh any benefits.

56.   Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business & Professions Code § 17200, weighing the utility of the defendant's conduct against the gravity of the harm to the alleged victim.

57.   Here, Defendant's challenged conduct of has no utility and financially harms purchasers. Thus, the utility of Defendant's conduct is vastly outweighed by the gravity of harm.

58.   The California legislature maintains a declared policy of prohibiting nonfunctional slack-fill in consumer goods, as reflected in California Business & Professions Code § 12606.2 and California Health & Safety Code § 110100.

59.   Defendant's packaging of the Products, as alleged herein, is false, deceptive, misleading, and unreasonable, and constitutes unfair conduct.

60.   Defendant knew or should have known of its unfair conduct.

61.   As alleged in the preceding paragraphs, the misrepresentations by Defendant detailed above constitute an unfair business practice within the meaning of California Business & Professions Code § 17200.

62.     There existed reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendant could have used packaging appropriate for the amount of skin cream product contained within the Products.

63.     All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's unfair conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

64.     Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unfair conduct. Plaintiff paid an unwarranted premium for this product. Specifically, Plaintiff paid for lotion she never received. Plaintiff would not have purchased the Product if she had known that the Product's packaging contained nonfunctional slack-fill.

**B. "Unlawful" Prong**

65.     California Business & Professions Code § 17200, *et seq.*, identifies violations of other laws as unlawful practices that the unfair competition law makes independently actionable.

66.     Defendant's packaging of the Products, as alleged in the preceding paragraphs, violates California Civil Code § 1750, *et. seq.*, California Business & Professions Code § 17500, *et. seq.*, and 21 C.F.R § 100.100.

67.     Defendant's packaging of the Products, as alleged herein, is false, deceptive, misleading, and unreasonable, and constitutes unlawful conduct.

68.     Defendant knew or should have known of its unlawful conduct.

69.     As alleged herein, the misrepresentations by Defendant detailed above constitute an unlawful business practice within the meaning of California Business & Professions Code §17200.

70.     There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendant could have either used packaging appropriate for the amount of beauty cream product contained therein or indicated how much lotion the Products contained with a clear and conspicuous fill line.

71.     All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's unlawful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

72.     Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unlawful conduct. Plaintiff paid an unwarranted premium for this product. Specifically, Plaintiff paid for beauty cream product she never received. Plaintiff would not have purchased the Products if she had known that the packaging contained nonfunctional slack-fill.

73.     As a result of the conduct described herein, Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

(1)     The applicable limitations period is four years for claims brought under the UCL, which is one year longer than the applicable statute of limitations under the FAL and CLRA. Thus, class members who purchased the Products between 3 and 4 years prior to the filing of the complaint will be barred from the Class if equitable relief were not granted under the UCL.

(2)     The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein to include, for example, the overall unfair marketing scheme of underfilling the Products' packaging. Thus, Plaintiff and class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and certain statutorily enumerated conduct).

74.     Pursuant to Civil Code § 3287(a), Plaintiff and the Class are further entitled to prejudgment interest as a direct and proximate result of Defendant's unfair and unlawful business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the Class are entitled to interest in an amount according to proof.

**SECOND CAUSE OF ACTION**

**FALSE AND MISLEADING ADVERTISING IN VIOLATION OF**

**BUSINESS & PROFESSIONS CODE § 17500, _et seq._**

EXHIBIT A

75.     Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs and incorporate the same as if set forth herein at length.

76.     Plaintiff brings this claim individually and on behalf of the Class.

77.     California's False Advertising Law ("FAL"), California Business & Professions Code § 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, in any advertising device or in any other manner or means whatever, including over the Internet, any statement, concerning personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should beknown, to be untrue or misleading."

78.     Defendant knowingly manipulated the physical dimensions of the Products' containers, or stated another way, under-filled the amount of lotion in the Products, as a means to mislead the public about the amount of beauty cream product contained in each package.

79.     Defendant controlled the packaging of the Products. It knew or should have known, through the exercise of reasonable care, that its representations about the quantity of skin cream product contained in the Products were untrue and misleading.

80.     Defendant's action of packaging the Products with nonfunctional slack-fill, instead of including more lotion in the container or decreasing the size of the container, is likely to deceive the general public.

81.     Defendant's actions were false and misleading, such that the general public is and was likely to be deceived, in violation of section 17500.

82.     Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists. The scope of permissible plaintiffs under the FAL is broader than the CLRA to include, for example, individuals or entities who purchased the Products for nonpersonal, non-family, and non-household purposes. Thus, Plaintiff and class members may be entitled to restitution under the FAL, while not entitled to damages under the CLRA

83.     Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's false representations. Plaintiff purchased the Product in reliance upon the claims by

Defendant that the Products were of the quantity represented by Defendant's packaging and advertising. Plaintiff would not have purchased the Product if she had known that the packaging and labeling as alleged herein were false.

84.    Plaintiff and members of the Class also request an order requiring Defendant disgorge its ill-gotten gains and/or award full restitution of all monies wrongfully acquired by Defendant by means of such acts of false advertising, plus interests and attorneys' fees.

**THIRD CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT,**

**CALIFORNIA CIVIL CODE § 1750, *et seq.***

85.    Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs and incorporate the same as if set forth herein at length.

86.    Plaintiff brings this claim individually and on behalf of the Class.

87.    The Consumer Legal Remedies Act ("CLRA") prohibits certain "unfair methods of competition and unfair or deceptive acts or practices" in connection with a sale of goods.

88.    The practices described herein, specifically Defendant's packaging, advertising, and sale of the Products, were intended to result and did result in the sale of the Products to the consuming public and violated and continue to violate sections 1770(a)(2), 1770(a)(5), 1770(a)(7), and 1770(a)(9) of the CLRA by: (1) misrepresenting the approval of the Products as compliant with the Sherman Law; (2) representing the Products have characteristics and quantities that it does not have; (3) advertising and packaging the Products with intent not to sell them as advertised and packaged; and (4) representing that the Products have been supplied in accordance with a previous representation as to the quantity of lotion contained within each container, when they have not.

89.    Defendant packaged the Products in containers that contain significant nonfunctional slack-fill and made material misrepresentations to deceive Plaintiff and the Class.

90.    Defendant deceived Plaintiff and the Class by misrepresenting the Products as having characteristics and quantities which they do not have, e.g., that the Products are free of nonfunctional slack-fill when they are not. In doing so, Defendant intentionally misrepresented and concealed

- 16 -
COMPLAINT

**EXHIBIT A**

25

material facts from Plaintiff and the Class. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Class and depriving them of their legal rights and money.

91.     Defendant deceived Plaintiff and the Class by packaging and advertising the Products with intent not to sell it as advertised and by intentionally underfilling the Products' containers and replacing beauty cream product with nonfunctional slack-fill. In doing so, Defendant intentionally misrepresented and concealed material facts from Plaintiff and the Class. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Class and depriving them of their legal rights and money.

92.     Defendant deceived Plaintiff and the Class by representing that the Products were supplied in accordance with an accurate representation as to the quantity of beauty cream contained therein when they were not. Defendant presented the physical dimensions of the Products' packaging to Plaintiff and the Class before the point of purchase and gave Plaintiff and the Class a reasonable expectation that the quantity of product contained therein would be commensurate with the size of the packaging. In doing so, Defendant intentionally misrepresented and concealed material facts from Plaintiff and the Class. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Class and depriving them of their legal rights and money.

93.     Defendant knew or should have known, through the exercise of reasonable care, that the Products' packaging was misleading.

94.     Defendant's actions as described herein were done with conscious disregard of Plaintiff's rights.

95.     Defendant's packaging of the Products was a material factor in Plaintiff's and the Class's decisions to purchase the Products. Based on Defendant's packaging of the Products, Plaintiff and the Class reasonably believed that they were getting more product than they actually received. Had they known the truth, Plaintiff and the Class would not have purchased the Products.

96.     Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unfair and unlawful conduct. Specifically, Plaintiff paid for beauty cream product she never received. Plaintiff would not have purchased the Products had she known the container contained nonfunctional slack-fill.

97.     Notwithstanding anything to the contrary herein and in accordance with Section 1782(d), Plaintiff currently seeks injunctive relief only under the claim for violation of the Consumer Legal Remedies Act.  In accordance with California Civil Code Section 1782(a), this Complaint serves to (1) notify Defendant of the acts and practices that are unlawful under Section 1770 and of the particular violations of Section 1770; and (2) demand that Defendant correct, repair, replace, or otherwise rectify the goods or services in violation of Section 1770.  In not less than 30 days, Plaintiff will amend this complaint to include a request for compensatory damages, statutory damages, restitution, and attorneys' fees under the C.L.R.A.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment and relief on all causes of action as follows:

A.     An Order certifying the Class, appointing Plaintiff as class representative, and designating Plaintiff's counsel as counsel for the Class;

B.     Damages against Defendant in an amount to be determined at trial, together with pre- and post-judgment interest at the maximum rate allowable by law on any amounts awarded;

C.     Restitution and/or disgorgement in an amount to be determined at trial;

D.     Reasonable attorneys' fees and costs; and

E.     Any and all other relief at law or equity to which Plaintiff may be entitled under applicable law or procedure. other and further as may be just and proper.

Dated: December 29, 2022          PACIFIC TRIAL ATTORNEYS, APC

By: _____
Scott. J. Ferrell
Attorneys for Plaintiff

EXHIBIT A

27

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Scott J. Ferrell (Bar #202091) / Victoria C. Knowles (Bar # 277231)<br>PACIFIC TRIAL ATTORNEYS, A Professional Corporation<br>4100 Newport Place Drive, Suite 800, Newport Beach, CA 92660 | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego |

TELEPHONE NO.: (949) 706-6464          FAX NO.:

ATTORNEY FOR *(Name)*: Plaintiff and the Class

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

STREET ADDRESS: 330 W. Broadway

MAILING ADDRESS:

CITY AND ZIP CODE: San Diego, CA 92101

BRANCH NAME:

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**12/29/2022** at 12:44:22 PM

Clerk of the Superior Court
By Brenda Ramirez, Deputy Clerk

CASE NAME:
Reyes v. L'Occitane, Inc., et al.

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | CASE NUMBER: 37-2022-00052096-CU-MT-CTL |
|---|---|---|---|
| [X] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE: Judge Keri Katz<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [X] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [X] is   [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [X] Large number of separately represented parties
   b. [X] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [X] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [X] monetary   b. [X] nonmonetary; declaratory or injunctive relief   c. [ ] punitive

4. Number of causes of action *(specify)*: Three (3)

5. This case [X] is   [ ] is not   a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: December 29, 2022

Scott J. Ferrell
_____
(TYPE OR PRINT NAME)                    ►          _____
                                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov* |

*LexisNexis® Automated California Judicial Council Forms*

**EXHIBIT A**

28

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
  Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
  Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/ Wrongful Death
  Product Liability *(not asbestos or toxic/environmental)* (24)
  Medical Malpractice (45)
    Medical Malpractice– Physicians & Surgeons
    Other Professional Health Care Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip and fall)
    Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
    Intentional Infliction of Emotional Distress
    Negligent Infliction of Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business Practice (07)
  Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
  Defamation (e.g., slander, libel) (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice *(not medical or legal)*
  Other Non-PI/PD/WD Tort (35)

**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
    Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/ Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections Case
  Insurance Coverage *(not provisionally complex)* (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
  Eminent Domain/Inverse Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court Case Matter
    Writ–Other Limited Court Case Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment *(non-domestic relations)*
    Sister State Judgment
    Administrative Agency Award *(not unpaid taxes)*
    Petition/Certification of Entry of Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-harassment)*
    Mechanics Lien
    Other Commercial Complaint Case *(non-tort/non-complex)*
    Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
  Partnership and Corporate Governance (21)
  Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late Claim
    Other Civil Petition

## EXHIBIT A
29

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | |
|---|---|
| STREET ADDRESS: 330 W Broadway | |
| MAILING ADDRESS: 330 W Broadway | |
| CITY AND ZIP CODE: San Diego, CA 92101-3827 | |
| DIVISION: Central | |
| TELEPHONE NUMBER: (619) 450-7074 | |

| PLAINTIFF(S) / PETITIONER(S):   Bonnie Reyes |
|---|
| DEFENDANT(S) / RESPONDENT(S):   L'Occitane Inc |
| |
| REYES VS L'OCCITANE INC [E-FILE] |

| NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE (CIVIL) | CASE NUMBER: |
|---|---|
| | 37-2022-00052096-CU-MT-CTL |

**CASE ASSIGNED FOR ALL PURPOSES TO:**

Judge:  Keri Katz                          Department: C-74

**COMPLAINT/PETITION FILED:** 12/29/2022

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 06/16/2023 | 10:00 am | C-74 | Keri Katz |

**Due to the COVID-19 pandemic, all Case Management Conferences (CMCs) are being conducted virtually unless there is a court order stating otherwise.** Prior to the hearing date, visit the "virtual hearings" page for the most current instructions on how to appear for the applicable case-type/department on the court's website at www.sdcourt.ca.gov.

A Case Management Statement (JC Form #CM-110) must be completed by counsel for all parties and by all self-represented litigants and timely filed with the court at least 15 days prior to the initial CMC. (San Diego Superior Court (SDSC) Local Rules, rule 2.1.9; Cal. Rules of Court, rule 3.725).

All counsel of record and self-represented litigants must appear at the CMC, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of Alternative Dispute Resolution (ADR) options.

It is the duty of each plaintiff (and cross-complainant) to serve a copy of this Notice of Case Assignment and Case Management Conference (SDSC Form #CIV-721) with the complaint (and cross-complaint), the Alternative Dispute Resolution (ADR) Information Form (SDSC Form # CIV-730), a Stipulation to Use Alternative Dispute Resolution (ADR) (SDSC Form # CIV-359), and other documents on all parties to the action as set out in SDSC Local Rules, rule 2.1.5.

**TIME FOR SERVICE AND RESPONSE:** The following rules apply to civil cases except for collections cases under California Rules of Court, rule 3.740(a), unlawful detainer actions, proceedings under the Family Code, and other proceedings for which different service requirements are prescribed by law (Cal. Rules of Court, rule 3.110; SDSC Local Rules, rule 2.1.5):
- **Service:** The complaint must be served on all named defendants, and proof of service filed with the court within 60 days after filing the complaint. An amended complaint adding a defendant must be served on the added defendant and proof of service filed within 30 days after filing of the amended complaint. A cross-complaint against a party who has appeared in the action must be accompanied by proof of service on that party at the time it is filed. If it adds a new party, the cross-complaint must be served on all parties and proof of service on the new party must be filed within 30 days of the filing of the cross-complaint.
- **Defendant's appearance:** Unless a special appearance is made, each defendant served must generally appear (as defined in Code of Civ. Proc. § 1014) within 30 days of service of the complaint/cross-complaint.
- **Extensions:** The parties may stipulate without leave of court to one 15-day extension beyond the 30-day time period prescribed for the response after service of the initial complaint (SDSC Local Rules, rule 2.1.6). If a party fails to serve and file pleadings as required under this rule, and has not obtained an order extending time to serve its pleadings, the court may issue an order to show cause why sanctions shall not be imposed.

**JURY FEES:** In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

**COURT REPORTERS:** Official Court Reporters are not normally available in civil matters, but may be requested in certain situations no later than 10 days before the hearing date. See SDSC Local Rules, rule 1.2.3 and Policy Regarding Normal Availability and Unavailability of Official Court Reporters (SDSC Form #ADM-317) for further information.

**ALTERNATIVE DISPUTE RESOLUTION (ADR):** The court discourages any unnecessary delay in civil actions; therefore, continuances are discouraged and timely resolution of all actions, including submitting to any form of ADR is encouraged. The court encourages and expects the parties to consider using ADR options prior to the CMC. The use of ADR will be discussed at the CMC. Prior to the CMC, parties stipulating to the ADR process may file the Stipulation to Use Alternative Dispute Resolution (SDSC Form #CIV-359).

SDSC CIV-721 (Rev. 04-21)    **NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE**       Page: 1
**(CIVIL)**

**EXHIBIT A**
30

## NOTICE OF E-FILING REQUIREMENTS
## AND IMAGED DOCUMENTS

Effective April 15, 2021, e-filing is required for attorneys in represented cases in all limited and unlimited civil cases, pursuant to the San Diego Superior Court General Order: In Re Procedures Regarding Electronically Imaged Court Records, Electronic Filing and Access to Electronic Court Records in Civil and Probate Cases. Additionally, you are encouraged to review CIV-409 for a listing of documents that are not eligible for e-filing. E-filing is also encouraged, but not mandated, for self-represented litigants, unless otherwise ordered by the court. All e-filers are required to comply with the e-filing requirements set forth in Electronic Filing Requirements (Civil) (SDSC Form #CIV-409) and Cal. Rules of Court, rules 2.250-2.261.

All Civil cases are assigned to departments that are part of the court's "Imaging Program." This means that original documents filed with the court will be imaged, held for 30 days, and then destroyed, with the exception of those original documents the court is statutorily required to maintain. The electronic copy of the filed document(s) will be the official court record, pursuant to Government Code § 68150. Thus, original documents should not be attached to pleadings filed with the San Diego Superior Court, unless it is a document for which the law requires an original be filed. Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant, or petitioner to serve a copy of this Notice of Case Assignment and Case Management Conference (Civil) (SDSC Form #CIV-721) with the complaint, cross-complaint, or petition on all parties to the action.

On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words "IMAGED FILE" in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.

The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and may be found on the court's website at www.sdcourt.ca.gov.

EXHIBIT A

31

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(name and Address)* | *FOR COURT USE ONLY* |
|---|---|
| SCOTT J. FERRELL, (SBN: 202091)<br>VICTORIA C. KNOWLES (SBN: 277231)<br>PACIFIC TRIAL ATTORNEYS<br>A PROFESSIONAL CORPORATION<br>4100 NEWPORT PLACE DRIVE, SUITE 800<br>NEWPORT BEACH, CA 92660<br><br>TELEPHONE NO.: (949) 706-6464   FAX NO. *(Optional)*: (949) 706-6469<br>E–MAIL ADDRESS *(Optional)*: sferrell@pacifictrialattorneys.com<br>ATTORNEY FOR *(Name)*: PLAINTIFF | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br><br>**01/19/2023** at 12:56:00 AM<br><br>Clerk of the Superior Court<br>By E- Filing,Deputy Clerk |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Diego |
|---|
| STREET ADDRESS: 330 West Broadway |
| MAILING ADDRESS: |
| CITY AND ZIP CODE: San Diego, CA 92101 |
| BRANCH NAME: |

| PLAINTIFF/PETITIONER: Bonnie Reyes, an individually and on behalf of all others similarly situated<br><br>DEFENDANT/RESPONDENT: L'Occitane, Inc., a New York Corporation, et al. | CASE NUMBER:<br>**37-2022-00052096-CU-MT-CTL** |
|---|---|

| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: 1166692JR |
|---|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of :
   - a.☒ Summons
   - b.☒ Complaint
   - c ☐ Alternative Dispute Resolution (ADR) package
   - d ☒ Civil Case Cover Sheet *(served in complex cases only)*
   - e ☐ cross-complaint
   - f. ☒ other *(specify documents)*: NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE (CIVIL);

3. a. Party served: *(specify name of party as shown on documents served)*:
   L'Occitane, Inc., a New York Corporation
   b. Person served (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made)*(specify name and relationship to the party named in item 3a)*:
   CSC  Lawyers Incorporating Service, Registered Agent, by serving Koy Saechao, Service of
Process Intake Clerk

4. Address where the party was served: 2710 GATEWAY OAKS DRIVE SUITE 150N
   SACRAMENTO, CA 95833

5. I served the party *(check proper box)*
   a. ☒ **by personal service**. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: January 4, 2023   (2) at: *(time)* 2:39 PM

   b. ☐ **by substituted service**. On *(date)*:          at: *(time)*          . I left the documents listed in item 2 with or in the presence of (name and title or relationship to the person indicated in item 3):
      (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
      (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
      (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
      (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on
         (date):          (city):          **or** ☐ a declaration of mailing is attached.
      (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

**Page 1 of 2**

**PROOF OF SERVICE OF SUMMONS** Code of Civil Procedure § 417.10

**EXHIBIT B**
32

| PLANTIFF/PETITIONER:  Bonnie Reyes, an individually and on behalf of all others similarly situated | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  L'Occitane, Inc., a New York Corporation, et al. | **37-2022-00052096-CU-MT-CTL** |

5.  c. ☐  **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) (date):           (1) (city):

    (3) ☐  with two copies of the *Notice and Acknowledgment of Receipt* (form 982(a)(4)) and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt *(form 982(a)(4).)* (Code Civ. Proc., § 415.30.)

    (4) ☐  to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. ☐  **by other means** (specify means of service and authorizing code section):

        ☐  Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

    a. ☐ as an individual defendant

    b. ☐ as the person sued under the fictitious name of (specify):

    c. ☒ on behalf of (specify): L'Occitane, Inc., a New York Corporation

under the following Code of Civil Procedure section:

| | |
|---|---|
| ☒ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7.  **Person who served papers**

    a.  Name: Robert J. Mason

    b.  Address: **800 W. 1ST STREET, SUITE 200-B LOS ANGELES, CALIFORNIA 90012**

    c.  Telephone number: **(213) 607-9000**

    d.  The fee for service was: $ 99.00

    e.  I am:

        (1) ☐ not a registered California process server.

        (2) ☐ exempt from registration under Business and Professions Code section 22350(b).

        (3) ☒ registered California process server:

            (i) ☐ owner ☐ Employee ☒ independent contractor.

            (ii) ☒ Registration No.:03-007

            (iii) ☒ County: Placer

**USA Legal Network**

8.  ☒ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    Or

9.  ☐ I am a California sherif or marshal and I certify that the foregoing is true and correct.

Date: January 11, 2023

Robert J. Mason

_____     _____

(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHALL)     (SIGNATURE)

Page 2 of 2

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure § 417.10

EXHIBIT B



# Register of Actions (ROA)

## Case Information

| | | | |
|---|---|---|---|
| Case Number: | **37-2022-00052096-CU-MT-CTL** | Date Filed: | 12/29/2022 |
| Case Title: | Reyes vs L'Occitane Inc [E-FILE] | Case Status: | Pending |
| Case Category: | Civil - Unlimited | Location: | Central |
| Case Type: | Mass Tort | Judicial Officer: | Keri Katz |
| Case Age: | 34 days | Department: | C-74 |

## Future Events

| Event Date | Event Time | Location | Event Type |
|---|---|---|---|
| 06/16/2023 | 10:00 AM | C-74 | Civil Case Management Conference - Complaint |

1

## Participants

| Name | Role | Representation |
|---|---|---|
| L'Occitane Inc | Defendant | |
| Reyes, Bonnie | Plaintiff | Ferrell, Scott J |

1

## Representation

| Name | Address | Phone Number |
|---|---|---|
| FERRELL, SCOTT J | PACIFIC TRIAL ATTORNEYS 4100 Newport Place Drive 800 Newport Beach CA 92660 | (949) 706-6464 |

1

## Register of Actions

All Entries | Filing Entries | Minutes Entries | Scheduling Entries

Enter text to search

1

| ROA# | Entry Date | Short/Long Entry | Filed By | Document | Cart |
|---|---|---|---|---|---|

EXHIBIT C

| ROA# | Entry Date | Short/Long Entry | Filed By | Document | Cart |
|------|-----------|------------------|----------|----------|------|
| 8 | 01/19/2023 | Proof of Service of 30-day Summons & Complaint - Personal filed by Reyes, Bonnie. Refers to: L'Occitane Inc | Reyes, Bonnie (Plaintiff) | Proof of Service of 30-day Summons & Complaint - Personal (Proof of Service - Case Initiating Document) | **Add to Cart** |
| 7 | 12/30/2022 | Case initiation form printed. | | Notice of Case Assignment SD | **Add to Cart** |
| 6 | 12/30/2022 | Civil Case Management Conference scheduled for 06/16/2023 at 10:00:00 AM at Central in C-74 Keri Katz. | | | |
| 5 | 12/29/2022 | Case assigned to Judicial Officer Katz, Keri. | | | |
| 4 | 12/30/2022 | Summons issued. | | | |
| 3 | 12/29/2022 | Original Summons filed by Reyes, Bonnie. Refers to: L'Occitane Inc | Reyes, Bonnie (Plaintiff) | Original Summons (Warrants/Issuance Returns) | **Add to Cart** |
| 2 | 12/29/2022 | Civil Case Cover Sheet filed by Reyes, Bonnie. Refers to: L'Occitane Inc | Reyes, Bonnie (Plaintiff) | Civil Case Cover Sheet (Cover Sheets) | **Add to Cart** |
| 1 | 12/29/2022 | Complaint filed by Reyes, Bonnie. Refers to: L'Occitane Inc | Reyes, Bonnie (Plaintiff) | Complaint (Case Initiation) | **Add to Cart** |

| | | 1 | | |
|--|--|---|--|--|

**THE INFORMATION IN THIS REGISTER OF ACTIONS IS PROVIDED AS IS, WITHOUT WARRANTY BY THE SAN DIEGO SUPERIOR COURT AS TO CONTENT OR ACCURACY OF THE INFORMATION.** The Entry Date on the Register of Actions may not always reflect the actual filing date of a document and not all documents filed with the Court are listed on the Register of Actions. It is recommended that users refer to the case file for confirmation.

**EXHIBIT C**

35