PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
Victoria C. Knowles, Bar No 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA  92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT FOR THE**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BONNIE REYES, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>L'OCCITANE, INC., a New York corporation, and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No. 3:23-cv-00203-RSH-WVG<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>1. VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, BUSINESS AND PROFESSIONS CODE § 17200, *et seq.*<br>2. FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17500, *et seq.*<br>3. VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, CIVIL CODE § 1750, *et. seq.*<br><br>Filed: December 29, 2022<br>Removed: February 2, 2023<br>Trial Date: None Set |

1

### INTRODUCTION

2      1.      Defendant L'Occitane, Inc. ("Defendant") manufactures and sells a

3  popular beauty product, Ultra Rich Body Cream for Dry and Sensitive Skin (the

4  "Product"), throughout the United States. To increase profits at the expense of

5  consumers and fair competition, Defendant deceptively sells the Product in an oversized

6  container that does not reasonably inform consumers that they are more than half

7  empty. Defendant dupes unsuspecting consumers across America to pay premium

8  prices for empty space. Below is a true and correct image of Defendant's Product in an

9  opaque container evidencing the deception. The first photograph shows the Product as it

10  appears to the purchaser, and the second photograph shows that the Product packaging

11  is approximately 50% empty.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28





2.      Defendant markets the Product in a systematically misleading manner by representing it as adequately filled when, in fact, it contains an unlawful amount of empty space or "slack-fill." Defendant underfills the Product for no lawful reason. The front of the Product's packaging does not include any information that would reasonably apprise Plaintiff of the quantity of product relative to the size of the container, such as a fill line or indication that the inner lining of the container restricts the amount of product from filling what appears from the outside to be a full, round container.

3.      Defendant underfills the Product to save money and to deceive consumers into purchasing the Product over its competitors' products. Defendant's slack-fill scheme not only harms consumers, but it also harms its competitors who implemented labeling changes designed to alert consumers to the true amount of product in each container.

4.      Accordingly, Defendant has violated the California Consumers Legal Remedies Act ("CLRA"), particularly California Civil Code sections 1770(a)(2), 1770(a)(5), 1770(a)(7), and 1770(a)(9). As such, Defendant has committed per se violations of the Unfair Competition Law ("UCL"), Business & Professions Code section 17200, *et seq.* and the False Advertising Law ("FAL"), Business & Professions Code section 17500, *et seq.*

5.      Plaintiff Bonnie Reyes ("Plaintiff") and other California consumers who have purchased the Product have thus suffered injuries in fact caused by the false, unfair, deceptive, unlawful, and misleading practices set forth herein.

6.      Several California courts have found that cases involving nearly identical claims are meritorious and appropriate for class treatment. *See, e.g.*, *Winkelbauer v. Orgain Mgmt. et. al*, Case No. 20STCV44583 (L.A.S.C. May 20, 2021) (defendant's demurrer to claims involving slack-filled protein powder products overruled); *Merry, et al. v. International Coffee & Tea, LLC dba The Coffee Bean*, Case No. CIVDS1920749 (San Bernardino Superior Court Jan. 27, 2020) (defendant's demurrer to slack-filled powder container claims overruled); *Tsuchiyama v. Taste of Nature, Inc*., Case No. BC651252 (L.A.S.C. Feb. 28, 2018) (defendant's motion for judgment on the pleadings involving slack-filled Cookie Dough Bites® candy box claims denied and nationwide settlement subsequently certified through Missouri court); *Thomas v. Nestle USA, Inc.*, Cal. Sup. Case No. BC649863 (April 29, 2020) (certifying as a class action, over opposition, slack-fill claims brought under California consumer protection laws).

## PARTIES

7.      Plaintiff is, and at all times relevant hereto was, a citizen of California. She purchased Defendant's 6.9-ounce size Ultra Rich Body Cream for Dry and Sensitive Skin for personal use in May 2022 from the Sephora retail store located at 7007 Friars Rd., in San Diego, California.  She paid approximately $49.00, a premium price for the Product. In making her purchase, Plaintiff relied upon the opaque packaging, including the size of the container and product label, which was prepared

and approved by Defendant and its agents, and disseminated state and nationwide, as well as designed to encourage consumers like Plaintiff to purchase the Product. Plaintiff understood the size of the container and product label to indicate that the amount of lotion contained therein was commensurate with the size of the container, and she would not have purchased the Product, or would not have paid a price premium for the Product, had she known that the size of the container and product label were false and misleading. If the Product's packaging and labels were not misleading, then Plaintiff would purchase the Product in the future. Plaintiff intends to purchase the Product in the future but cannot reasonably do so without an injunctive relief order from the Court ensuring Defendant's packaging, labeling, and filling of the Product is accurate and lawful, at which point she will reasonably be able to rely upon Defendant's representations about the Product.

8. Defendant L'Occitane Inc. is a New York corporation with its principal place of business located in New York, New York. Defendant, directly and through its agents, conducts business nationwide. Defendant has substantial contacts with and receives substantial benefits and income from and through the State of California. Defendant is the owner, manufacturer, and distributor of the Product, and is the company that created and/or authorized the false, misleading, and deceptive packaging for the Product.

9. At all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and/or scope of said agency and/or employment with the full knowledge and consent of each of the Defendants. Each of the acts and/or omissions complained of herein were alleged and made known to, and ratified by, each of the other Defendants (L'Occitane Inc. and DOE Defendants will hereafter collectively be referred to as "Defendants").

10. The true names and capacities of the Defendants sued herein as DOES 1 through 25, inclusive, are currently unknown to Plaintiff, who therefore sue such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is

legally responsible for the unlawful acts alleged herein.  Plaintiff will seek leave of Court to amend this Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

11.    In committing the wrongful acts alleged herein, Defendant planned and participated in and furthered a common scheme by means of false, misleading, and deceptive representations to induce members of the public to purchase the Product. Defendant participated in the making of such representations in that it did disseminate or cause to be disseminated said misrepresentations.

12.    Defendant, upon becoming involved with the manufacture, advertising, and sale of the Product, knew or should have known that its advertising of the Product's packaging, specifically by representing that they were full, was false, deceptive, and misleading. Defendant affirmatively misrepresented the amount of lotion contained in the Product's packaging in order to convince the public and consumers to purchase the Product, resulting in profits of millions of dollars or more to Defendant, all to the damage and detriment of the consuming public.

13.    Defendant has created and still perpetuates a falsehood that the Product's packaging contains an amount of cream commensurate with the size of the package, though they actually contain nonfunctional, unlawful slack-fill. As a result, Defendant's consistent and uniform advertising claims about the Product are false, misleading, and/or likely to deceive in violation of California packaging and advertising laws.

## JURISDICTION AND VENUE

14.    Plaintiff does not dispute Defendant's bases for removal pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

## FACTUAL BACKGROUND

15.    The amount of product inside any product packaging is material to any consumer seeking to purchase that product. The average consumer spends only 13

seconds deciding whether to make an in-store purchase[1]; this decision is heavily dependent on a product's packaging, including the package dimensions. Research has demonstrated that packages that seem larger are more likely to be purchased because consumers expect package size to accurately represent the quantity of the good being purchased[2].

16.     Accordingly, Defendant chose a certain size container for its Product to convey to consumers that they are receiving a certain and substantial amount of lotion product commensurate with the size of the container.  Instead, consumers are receiving a substantial amount of nonfunctional slack-fill.

17.     Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein. Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for illegitimate or unlawful reasons.

18.     Defendant falsely represents the quantity of product in each of the Product's opaque containers through its packaging. The size of each container leads the reasonable consumer to believe he or she is purchasing a container full of beauty cream when in reality what they are actually receiving is significantly less than what is represented by the size of the container.

19.     Even if Plaintiff and other reasonable consumers of the Product had a reasonable opportunity to review, prior to the point of sale, other representations of quantity, such as net weight, they did not and would not have reasonably understood or expected such representations to translate to a quantity of lotion product meaningfully different from their expectation of an amount of skin cream commensurate with the size of the container.

20.     Prior to the point of sale, the Product's packaging does not allow for an accurate visual or audial confirmation of the quantity in the Product. The Product's

---

[1] Randall Beard, *Make the Most of Your Brand's 20-Second Window*, NIELSEN, Jan. 13, 2015, https://www.nielsen.com/insights/2015/make-the-most-of-your-brands-20-second-windown/     (last visited Feb. 28, 2023).
[2] P. Raghubir & A. Krishna, *Vital Dimensions in Volume Perception: Can the Eye Fool the Stomach?*, 36 J. MARKETING RESEARCH 313-326 (1999).

FIRST AMENDED CLASS ACTION COMPLAINT                                    3:23-cv-00203-RSH-WVG

opaque packaging prevents a consumer from observing the contents before opening. Even if a reasonable consumer were to "shake" the Product before opening the container, the reasonable consumer would not be able to discern the presence of any nonfunctional slack-fill, let alone the significant amount of nonfunctional slack-fill that is present in the Product.

21.    The other information that Defendant provides about the quantity of lotion on the label of the Product does not enable reasonable consumers to form any meaningful understanding about how to gauge the quantity of contents of the Product as compared to the size of the container itself. For instance, *nothing* on the outside of the Product and its labels would provide Plaintiff with any meaningful insight as to the amount of lotion to be expected, such as a fill line or indicator of the inner shape of the insert actually containing the lotion.





22.     Disclosures of net weight in ounces, pounds, or grams do not allow the reasonable consumer to make any meaningful conclusions about the quantity of skin cream contained in the Product containers that would be different from their expectation that the quantity of beauty cream is commensurate with the size of the container.

23.     Because the packages are filled to about half of their capacity, Defendant can increase the Product's fill level significantly without affecting how the containers are sealed, or it can disclose the fill-level on the outside labeling to inform consumers of the amount of lotion actually in the container, consistent with the law.

24.     Defendant may contend that the Product's outer aluminum packaging is reusable based on the plastic insert that may be removed and another plastic inserted to refill the aluminum packaging; however, neither the disposable plastic insert nor the outer aluminum packaging has any significant value independent of its function to hold the lotion product. The Product containers may be discarded immediately after the cream product is consumed.

25.     Defendant may allege that the shape of the inner plastic insert is necessary as finger-holds to remove the used plastic and insert a new plastic insert with lotion; however, the *entire* plastic insert is easily removeable without a finger-hold, raising the

question: if the entire plastic insert is easily removable without the finger-hold, why not simply have the refillable plastic insert match the size of the inside of the tin?   The answer is that Defendant simply wants a guise for its nonfunctional slack-fill.



26.   Defendant may also contend that a consumer may open the outer aluminum lid and see that the top, opaque seal reveals the finger-holds, allegedly informing consumers of this open space for finger-holds; however, even assuming a reasonable consumer understands that they may open the aluminum lid prior to purchase, the opaque seal does *not* reveal that the plastic insert is not actually filled completely with lotion, and that there is additional slack-fill below the seal.   More importantly though, removing the top aluminum lid does not reveal the shape of the *bottom* of the plastic insert, which is similarly and needlessly indented to, *again*, increase the nonfunctional slack-fill space.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

27.     Defendant can easily increase the quantity of lotion in each container (or, alternatively, decrease the size of the containers) significantly.

28.     Plaintiff would not have purchased the Product had she known that the Product contained slack-fill that serves no functional or lawful purpose.

<u>**None of the Slack-Fill Statutory Exceptions Apply to the Product**</u>

29.     None of the safe harbor exceptions for slack-fill at Business & Professions Code § 12606(b) apply to Defendant's Product.

**12606(b)(1)**: The slack-fill in the Product does not protect the contents of the packages. In fact, because the Product consists of cream, there is no need to protect the Product with the slack-fill present.

**12606(b)(2)**: The machines used to package the Product would not be affected if there was more cream product added. At most, a simple recalibration of the machines would be required. Upon information and belief, adjusting these machines is rather simple.

**12606(b)(3)**: The slack-fill present in the Product is not a result of the cream product settling during shipping and handling. Given the Product's density, shape, and composition, any settling occurs immediately at the point of fill. No measurable product settling occurs during subsequent shipping and handling. Even if *some* product settling may occur, there is no reason why the Product's containers are over 50% empty.

**12606(b)(4), (6)**: The slack-fill present in the Product does not accommodate required labeling, discourage pilfering, facilitate handling, or prevent tampering.

**12606(b)(5)**: The Product container is not a necessary part of the presentation of the Product.  It does not constitute a significant in proportion of the value of the Product, nor have an independent function to hold the product, such as a gift combined with a container that is intended for further use after the product is consumed, or durable commemorative or promotional packages.  Again, Defendant may contend that the Product's outer aluminum packaging is reusable

based on the plastic insert that may be removed and another plastic inserted to refill the aluminum packaging; however, neither the disposable plastic insert nor the outer aluminum packaging has any significant value independent of its function to hold the lotion product. The Product containers may be discarded immediately after the cream product is consumed.

**12606(b)(7)**: The product container does not bear a reasonable relationship to the actual amount of product contained inside, and the dimensions of the actual Product container, the Product, and/or the amount of product therein is not visible to the consumer at the point of sale, nor is dimension of the secondary use packaging, i.e. the plastic insert, visible to the consumer at the point of sale.

**12606(b)(8):** (A) The dimensions of the Product or immediate product container are not visible through the exterior packaging.  (B) The actual size of the Product or immediate product container is not clearly and conspicuously depicted on any side of the exterior packaging, nor accompanied by a clear and conspicuous disclosure that the depiction is the "actual size" of the Product or immediate Product container. (C) There is no line or a graphic that represents the Product or Product fill, nor any other indication of the actual plastic insert shape for the Product.

**12606(b)(9)**: There is no necessity of extra space in the Product to facilitate the mixing, adding, shaking, or dispensing of the lotion by consumers before use.

**12606(b)(10)**: The exterior packaging does not contain a product delivery or dosing device.

**12606(b)(11)**: The exterior packaging or immediate Product container is not a kit that consists of a system, or multiple components, designed to produce a particular result.

**12606(b)(12)**: The exterior packaging of the Product is not routinely displayed using tester units or demonstrations to consumers in retail stores, so that customers can see the actual, immediate container of the product being sold, or a

depinction of the actual size thereof before purchase.   Below are photographs of the Product's display at separate retail stores:

 



**12606(b)(13), (14), (15)**: The exterior packaging does not consist of single or multiunit presentation boxes of holiday or gift packages, is not for a combination

of one purchased product, together with a free sample or gift, and does not include computer hardware or software.

**12606(b)(16)**: The mode of commerce allows the consumer to view or handle the physical Product container.

## CLASS ACTION ALLEGATIONS

30.    Plaintiff bring this action on her own behalf and on behalf of all other persons similarly situated. The Class which Plaintiff seeks to represent comprises:

**All Californians who purchased Defendant's Product containing non-functional slack fill in California during the four years preceding the filing of this action (the "Class").**

31.    Excluded from the Class are Defendant's officers, directors, and employees, and any individual who received remuneration from Defendant in connection with that individual's use or endorsement of the Product. Said definition may be further defined or amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

32.    The Class is comprised of many thousands of persons. The Class is so numerous that joinder of all members is impracticable and the disposition of their claims in a class action will benefit the parties and the Court.

33.    Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common questions of law and fact include, but are not limited to, the following:

a. The true nature and amount of product contained in each Product's packaging;

b. Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Product are deceptive;

c. Whether Defendant's conduct is an unlawful business act or practice within the meaning of Business & Professions Code § 17200, *et seq.*;

d.  Whether Defendant's conduct is an unfair business act or practice within the meaning of Business & Professions Code § 17200, *et seq*.;

e.  Whether Defendant's advertising is untrue or misleading within the meaning of Business & Professions Code § 17500, *et seq*.;

f.  Whether Defendant made false and misleading representations in its advertising and labeling of the Product;

g.  Whether Defendant knew or should have known that the misrepresentations were false;

h.  Whether Plaintiff and the Class paid more money for the Product than they actually received;

i.  How much more money Plaintiff and the Class paid for the Product than they actually received; and

j.  Whether Defendant was unjustly enriched at the expense of Plaintiff and the Class members.

34.  Plaintiff's claims are typical of the claims of the proposed Class, as the representations and omissions made by Defendant are uniform and consistent and are contained on packaging and labeling that was seen and relied on by Plaintiff and members of the Class.

35.  Plaintiff will fairly and adequately represent and protect the interests of the proposed Class. Plaintiff has retained competent and experienced counsel in class action and other complex litigation.

36.  Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's false, deceptive, and misleading representations. Plaintiff purchased the Product because of the size of the containers and the Product labels, which she believed to be indicative of the amount of lotion contained therein as commensurate with the size of the container. Plaintiff relied on Defendant's representations and would not have purchased the Product if she had known that the packaging, labeling, and advertising as described herein was false and misleading.

37.     The Class is identifiable and readily ascertainable. Notice can be provided to such purchasers using techniques and a form of notice similar to those customarily used in class actions.

38.     A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for the Class to prosecute their claims individually. The trial and the litigation of Plaintiff's claims are manageable. Individual litigation of the legal and factual issues raised by Defendant's conduct would increase delay and expense to all parties and the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

39.     Defendant has acted on grounds generally applicable to the entire Class, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Class as a whole. The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Defendant.

40.     Absent a class action, Defendant will likely retain the benefits of its wrongdoing. Because of the small size of the individual Class members' claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein. Absent a representative action, the Class members will continue to suffer losses and Defendant will be allowed to continue these violations of law and to retain the proceeds of its ill-gotten gains.

## FIRST CAUSE OF ACTION

## VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW ("UCL")

## BUSINESS & PROFESSIONS CODE § 17200, *et seq*.

41.     Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs and incorporate the same as if set forth herein at length.

42.     Plaintiff brings this claim individually and on behalf of the Class.

43.     The California Sherman Food, Drug, and Cosmetic Act ("Sherman Law"), Cal. Health & Safety Code Section 109875 *et seq.*, declares any cosmetic to be misbranded if it is false or misleading in any particular or if the labeling and packaging do not conform with the requirements for labeling and packaging. Cal. Health & Safety Code §§ 109900, 111730, 111750.

44.     The UCL prohibits "any unlawful [or] unfair... business act or practice." Cal. Bus & Prof. Code § 17200.

### A. "Unfair Prong"

45.     Under the UCL, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California*, 142 Cal. App. 4th 1394, 1403 (2006).

46.     Defendant's actions alleged herein do not confer any benefit to consumers.

47.     Defendant's actions alleged herein cause injuries to consumers, who do not receive a quantity of product commensurate with their reasonable expectations.

48.     Defendant's actions alleged herein cause injuries to consumers, who do not receive a level of lotion commensurate with their reasonable expectations.

49.     Defendant's actions alleged herein cause injuries to consumers, who end up overpaying for the Product and receive a quantity of beauty cream less than what they reasonably expected to receive.

50.     Consumers cannot avoid any of the injuries caused by Defendant's actions as alleged herein.

51.     Accordingly, the injuries caused by Defendant's conduct alleged herein outweigh any benefits.

52.     Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business & Professions Code § 17200,

weighing the utility of the defendant's conduct against the gravity of the harm to the alleged victim.

53.     Here, Defendant's challenged conduct of has no utility and financially harms purchasers. Thus, the utility of Defendant's conduct is vastly outweighed by the gravity of harm.

54.     The California legislature maintains a declared policy of prohibiting nonfunctional slack-fill in consumer goods, as reflected in California Business & Professions Code § 12606 and California Health & Safety Code, Part 5, Chapter 7, Article 3.

55.     Defendant's packaging of the Product, as alleged herein, is false, deceptive, misleading, and unreasonable, and constitutes unfair conduct.

56.     Defendant knew or should have known of its unfair conduct.

57.     As alleged in the preceding paragraphs, the misrepresentations by Defendant detailed above constitute an unfair business practice within the meaning of California Business & Professions Code § 17200.

58.     There existed reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendant could have used packaging appropriate for the amount of skin cream product contained within the Product.

59.     All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's unfair conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

60.     Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unfair conduct. Plaintiff paid an unwarranted premium for this product.  Specifically, Plaintiff paid for lotion she never received. Plaintiff would not have purchased the Product if she had known that the Product's packaging contained nonfunctional slack-fill.

## B. "Unlawful" Prong

61.    California Business & Professions Code § 17200, *et seq.*, identifies violations of other laws as unlawful practices that the unfair competition law makes independently actionable.

62.    Defendant's packaging of the Product, as alleged in the preceding paragraphs, violates California Civil Code § 1750, *et. seq.*, and California Business & Professions Code § 17500, *et. seq.*

63.    Defendant's packaging of the Product, as alleged herein, is false, deceptive, misleading, and unreasonable, and constitutes unlawful conduct.

64.    Defendant knew or should have known of its unlawful conduct.

65.    As alleged herein, the misrepresentations by Defendant detailed above constitute an unlawful business practice within the meaning of California Business & Professions Code §17200.

66.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendant could have either used packaging appropriate for the amount of beauty cream contained in the Product or indicated how much lotion the Product contained with a clear and conspicuous fill line or other disclosure related to the unnecessarily small, shaped insert.

67.    All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's unlawful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

68.    Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unlawful conduct. Plaintiff paid an unwarranted premium for this product.  Specifically, Plaintiff paid for beauty cream product she never received. Plaintiff would not have purchased the Product if she had known that the packaging contained nonfunctional slack-fill.

69.    As a result of the conduct described herein, Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

a.   The applicable limitations period is four years for claims brought under the UCL, which is one year longer than the applicable statute of limitations under the FAL and CLRA. Thus, class members who purchased the Product between 3 and 4 years prior to the filing of the complaint will be barred from the Class if equitable relief were not granted under the UCL.

b.   The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein to include, for example, the overall unfair marketing scheme of underfilling the Product's packaging. Thus, Plaintiff and Class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and certain statutorily enumerated conduct).

70.   Pursuant to Civil Code § 3287(a), Plaintiff and the Class are further entitled to prejudgment interest as a direct and proximate result of Defendant's unfair and unlawful business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the Class are entitled to interest in an amount according to proof.

## SECOND CAUSE OF ACTION

## FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS & PROFESSIONS CODE § 17500, *et seq*. ("FAL")

71.   Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs and incorporate the same as if set forth herein at length.

72.   Plaintiff brings this claim individually and on behalf of the Class.

73.   California's FAL, California Business & Professions Code § 17500, *et seq*., makes it "unlawful for any person to make or disseminate or cause to be made or

disseminated before the public in this state, in any advertising device or in any other manner or means whatever, including over the Internet, any statement, concerning personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should beknown, to be untrue or misleading."

74.    Defendant knowingly manipulated the physical dimensions of the Product's container insert, or stated another way, under-filled the amount of lotion in the Product, as a means to mislead the public about the amount of beauty cream contained in the Product's package.

75.    Defendant controls and controlled the packaging of the Product. It knew or should have known, through the exercise of reasonable care, that its representations about the quantity of skin cream contained in the Product were untrue and misleading.

76.    Defendant's action of packaging the Product with nonfunctional slack-fill, instead of including more lotion in the container or decreasing the size of the container, or alternatively reshaping the removable plastic insert to fit the shape of the outer aluminum container, is likely to deceive the general public.

77.    Defendant's actions were false and misleading, such that the general public is and was likely to be deceived, in violation of section 17500.

78.    Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.  The scope of permissible plaintiffs under the FAL is broader than the CLRA to include, for example, individuals or entities who purchased the Product for nonpersonal, non-family, and non-household purposes. Thus, Plaintiff and Class members may be entitled to restitution under the FAL, while not entitled to damages under the CLRA.

79.    Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's false representations. Plaintiff purchased the Product in reliance upon the claims by Defendant that the Product was of the quantity represented by

Defendant's packaging and advertising. Plaintiff would not have purchased the Product if she had known that the packaging and labeling as alleged herein were false.

80.    Plaintiff and members of the Class also request an order requiring Defendant disgorge its ill-gotten gains and/or award full restitution of all monies wrongfully acquired by Defendant by means of such acts of false advertising, plus interests and attorneys' fees.

## THIRD CAUSE OF ACTION

## VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, CALIFORNIA CIVIL CODE § 1750, *et seq*. ("CLRA")

81.    Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs and incorporate the same as if set forth herein at length.

82.    Plaintiff brings this claim individually and on behalf of the Class.

83.    The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices" in connection with a sale of goods.

84.    The practices described herein, specifically Defendant's packaging, advertising, and sale of the Product, were intended to result and did result in the sale of the Product to the consuming public and violated and continue to violate sections 1770(a)(2), 1770(a)(5), 1770(a)(7), and 1770(a)(9) of the CLRA by: (1) misrepresenting the approval of the Product as compliant with the Sherman Law; (2) representing the Product has characteristics and quantities that it does not have; (3) advertising and packaging the Product with intent not to sell it as advertised and packaged; and (4) representing that the Product has been supplied in accordance with a previous representation as to the quantity of lotion contained within each container, when it has not.

85.    Defendant packaged the Product in containers that contain significant nonfunctional slack-fill and made material misrepresentations to deceive Plaintiff and the Class.

86.   Defendant deceived Plaintiff and the Class by misrepresenting the Product as having characteristics and quantities which it does not have, e.g., that the Product is free of nonfunctional slack-fill when it is not. In doing so, Defendant misrepresented and concealed material facts from Plaintiff and the Class. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Class and depriving them of their legal rights and money.

87.   Defendant deceived Plaintiff and the Class by packaging and advertising the Product with intent not to sell it as advertised and by intentionally underfilling the Product's containers and replacing beauty cream product with nonfunctional slack-fill. In doing so, Defendant misrepresented and concealed material facts from Plaintiff and the Class. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Class and depriving them of their legal rights and money.

88.   Defendant deceived Plaintiff and the Class by representing that the Product was supplied in accordance with an accurate representation as to the quantity of beauty cream contained therein when they were not. Defendant presented the physical dimensions of the Product's packaging to Plaintiff and the Class before the point of purchase and gave Plaintiff and the Class a reasonable expectation that the quantity of product contained therein would be commensurate with the size of the packaging. In doing so, Defendant misrepresented and concealed material facts from Plaintiff and the Class. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Class and depriving them of their legal rights and money.

89.   Defendant knew or should have known, through the exercise of reasonable care, that the Product's packaging was misleading.

90.   Defendant's actions as described herein were done with conscious disregard of Plaintiff's rights.

91.   Defendant's packaging of the Product was a material factor in Plaintiff's and the Class's decision to purchase the Product. Based on Defendant's packaging of the Product, Plaintiff and the Class reasonably believed that they were getting more

product than they actually received. Had they known the truth, Plaintiff and the Class would not have purchased the Product.

92.    Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unfair and unlawful conduct. Specifically, Plaintiff paid for beauty cream product she never received. Plaintiff would not have purchased the Product had she known the container contained nonfunctional slack-fill.

93.    Plaintiff respectfully requests that the Court enjoin Defendant from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to section 1780(a)(2). In addition, Defendant should be compelled to provide restitution and damages to consumers who paid for Product that are not what they expected to receive due to Defendant's misrepresentations.

94.    Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.  Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendant continues to deceptively use nonfunctional slack-fill in the Product. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unlawful conduct described herein and to prevent future harm − none of which can be achieved through available legal remedies. Further, injunctive relief, in the form of packaging or label modifications, is necessary to dispel public misperception about the Product that has resulted from years of Defendant's unfair and unlawful marketing efforts. Such modifications would include, but are not limited to, shrinking the packaging, adding more lotion to the Product, reshaping the refillable plastic insert so as not to be misleading and fit the outer aluminum container, or adding a disclosure regarding the shape of the plastic insert on the outside label of the Product. Such relief is also not available through a legal remedy as monetary damages may be awarded to remedy past harm (i.e., purchasers who have been misled), while injunctive relief is necessary to remedy future harm (i.e., prevent future purchasers from being misled), under the current circumstances where the dollar amount of future damages is not reasonably ascertainable at this time. Plaintiff is, currently, unable to

accurately quantify the damages caused by Defendant's future harm (e.g., the dollar amount that Plaintiff and Class members overpay for the underfilled Product), rendering injunctive relief a necessary remedy.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment and relief on all causes of action as follows:

A. An Order certifying the Class, appointing Plaintiff as class representative, and designating Plaintiff's counsel as counsel for the Class;

B. An order enjoining Defendant from continuing to package and/or label the Product as challenged herein;

C. Damages against Defendant in an amount to be determined at trial, together with pre- and post- judgement interest at the maximum rate allowable by law on any amounts awarded;

D. Restitution and/or disgorgement in an amount to be determined at trial;

E. Reasonable attorneys' fees and costs; and

F. Granting such other and further as may be just and proper.

Dated:  March 2, 2023                     PACIFIC TRIAL ATTORNEYS, APC

By:_____
Scott. J. Ferrell
Attorneys for Plaintiff

# CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2023, I electronically filed the foregoing **FIRST AMENDED CLASS ACTION COMPLAINT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

*/s/ Scott J. Ferrell*
Scott J. Ferrell